**UNITED STATES DISTRICT COURT**
**MIDDLE DISTRICT OF FLORIDA**
**TAMPA DIVISION**

**UNITED STATES OF AMERICA,**

    **Plaintiff,**

**v.**                                                                                                    **Case No. 8:05-cr-389-T-23TBM**

**JAMES DORSEY,**

    **Defendant.**
_____/

**REPORT AND RECOMMENDATION**

THIS MATTER is before the court on referral by the Honorable Steven D. Merryday for a Report and Recommendation on **Defendant James Dorsey's Motion to Suppress Evidence Seized after Warrantless Search of 2005 Kia on April 8, 2005 and Request for Hearing** (Doc. 34). By his motion, Defendant James Dorsey (hereinafter "Dorsey") seeks to suppress all evidence seized in a warrantless search of his 2005 Kia automobile on April 8, 2005. By his allegations, the government was without probable cause or other justifiable basis to conduct the search. The government has filed a response in opposition. (Doc. 44). A hearing on the matter was conducted December 14, 2005.

At the hearing, the government presented the testimony of Detective Sgt. Ken Castro, a twenty-three year veteran of the Sarasota Police Department (hereinafter "Castro"). By Castro's testimony, on April 8, 2005, he was coordinating an operation for the undercover purchase of crack cocaine from one Donald Shelley (hereinafter "Shelley). Detective James Rieser (hereinafter "Rieser"), acting undercover, had arranged the purchase of $250.00 of crack cocaine to occur at the Midtown Plaza.[1] Rieser traveled to the location and phoned

---

[1] Rieser's offense report, admitted by Dorsey as an exhibit to the hearing, indicates that the purchase was for $350.00 of rock cocaine. See (Def. Ex. 3)

Shelley. Castro and another officer went to Shelley's residence for surveillance. As Shelley left his residence, he drove to a post office. After leaving the post office, Castro and the other officer lost surveillance on Shelley. Believing that Dorsey was the source of Shelley's cocaine, Castro then proceeded directly to Dorsey's residence. Shortly after taking up surveillance near Dorsey's residence, Castro observed Dorsey arrive home and, less than five minutes later, Shelley drove up to the residence as well. Shelley entered the home, remained inside for three to four minutes, returned to his car, and then drove to the Midtown Plaza parking lot. When Shelley produced the crack cocaine, he was arrested. He agreed to cooperate and advised that Dorsey had been the supplier of the crack cocaine.

Armed with a pre-arranged warrant to search Shelley's residence, the officers and Shelley returned to his home. A search was conducted and Shelley thereafter agreed to contact Dorsey to attempt to arrange another purchase of cocaine. A controlled phone call was made to Dorsey and he agreed to bring over additional cocaine.[2] Surveillance units observed Dorsey leaving his residence and driving directly to Shelley's residence in a red 2005 Kia automobile. Dorsey parked his vehicle within ten feet of the front entrance to Shelley's apartment and entered the residence. Castro testified that he observed Dorsey enter carrying two baggies. When Castro confronted Dorsey, Dorsey dropped the baggies and stepped back out of the apartment. Castro and several officers subdued Dorsey outside the door of the apartment. Castro testified that he then looked inside the KIA and noticed a "large piece" of crack cocaine in plain view on the console. According to Castro, he intended to pursue forfeiture and impound the vehicle. Mr. Dorsey was transported to the police department and Rieser drove the Kia to the station.

---

[2]On cross examination, the witness testified that Shelley had asked Dorsey to bring two "quarter cookies" of cocaine. Rieser's report indicates Shelley asked Dorsey for a "half cookie" of rock cocaine. (Def. Ex. 3).

2

According to Castro, while at the station they discussed with Dorsey the possibility of Dorsey's cooperation. Rieser searched the vehicle and recovered the piece of crack cocaine originally observed,[3] as well as additional crack cocaine inside the vehicle.[4] Apparently, no inventory form was used when conducting the search.[5] After some additional discussions, Castro directed his unit back to Dorsey's home to execute a pre-arranged search warrant and to further attempt to do a deal with Dorsey's source. Dorsey's car was driven back to the residence as well. While waiting for events to evolve at Dorsey's house, they conducted a lien check and determined that there was a sizable lien on the car. Thus, they decided that they would not seek forfeiture of the vehicle and it was left at the residence.

Castro and the government justify the search as one supported by Castro's plain view of the crack cocaine on the console; one incident to Dorsey's arrest; one otherwise supported by probable cause; and as a standard inventory search conducted according to Sarasota Police policy. Dorsey argues that none of these possible exceptions to the warrant requirement apply to the circumstances in this case. According to Dorsey's argument, the "plain view" exception has not been established because even if Castro saw something from a position where he had a right to be (a matter here not disputed), there is no evidence that the rock

---

[3]As developed on cross-examination, Rieser's report indicates that, pursuant to the arrest, *he* observed the piece of crack cocaine in plain view on the *seat* of the Kia, and it makes no mention that Castro pointed it out to him.

[4]Rieser's report indicates the additional crack cocaine was located in the console.

[5]The department uses a standard form when conducting inventory searches. As an example, see Defendant's Ex. 4, which is the form filled out after the arrest of Dorsey's alleged supplier, Steve Washington (hereinafter "Washington"). It appears from Rieser's report that Washington was arrested the following day attempting to deliver additional cocaine to Dorsey's residence. Thereafter his car was impounded and searched [and the form was filled out.] (Def. Ex. 3).

"readily apparent" to the officer as cocaine.[6] By this contention, the officer was not demonstrated to be qualified to identify the substance as crack cocaine, nor did he testify that he immediately recognized the substance as crack cocaine, such that he might seize it under the plain view doctrine.[7] Dorsey's counsel argues that apart from this observation of the piece of crack cocaine, the police had no probable cause to justify the warrantless search of the vehicle. Here, counsel notes that, through Shelley, the police had specifically arranged for the purchase of two quarter cookies of crack cocaine and he urges that amount of crack cocaine was in fact delivered by Dorsey to Shelley's residence. From this and the lack of any other evidence that there was additional cocaine in the Kia, counsel urges the court that it should not find there was probable cause to believe the Kia contained additional cocaine. Counsel also urges that the case was not a proper search incident to arrest as Dorsey was outside his vehicle at the time of his arrest and the interior of the vehicle was outside of his "grabbable" area. Finally, counsel urges that the government has failed to demonstrate that this was an inventory search or one conducted according to criteria established by the police department for the conduct of such searches.

---

[6] To justify the application of the plain view doctrine, the seizing officer must (1) have independent justification for being in a position to see the items, (2) must discover the items inadvertently, and (3) must immediately observe the items as evidence. United States v. Jenkins, 901 F.2d 1075, 1081-82 (11th Cir. 1990)(citing United States v. Blum, 753 F.2d 999, 1002 (11th Cir. 1985), which cites to Coolidge v. New Hampshire, 403 U.S. 443 (1971)). In Coolidge, the Court observed that the extension of the original justification which is afforded by the "plain view" doctrine "is legitimate only where it is immediately apparent to the police that they have evidence before them. . . ." Id. at 466.

[7] Here, counsel obliquely questions the veracity of Castro by citing to that portion of Rieser's report wherein Rieser states "a search incident to arrest of Dorsey's 2005 Kia revealed a large rock cocaine chunk located in plain view on the passenger's seat of the Kia located by Rieser." See (Def. Exh. 3 at 8). The suggestion from this is that Castro's testimony that he observed crack on the console should be discredited. I cannot reach that conclusion on the record before me.

Based upon the record presented, the uncontroverted testimony reveals that after Dorsey was arrested, Castro looked into the interior of the Kia from a position outside the vehicle and immediately observed a large piece of crack cocaine on the console. By his description, the piece was larger than a dime but smaller than a quarter. According to Castro's testimony, he is an officer with 23 years experience, the majority of which he spent in narcotics. Given that the applicable standard here is probable cause, I conclude that Castro was qualified by reason of his experience to recognize the substance as crack cocaine and he would have been justified in entering the vehicle to seize the rock at the scene had he chosen to do so.[8] See United States v. Desir, 257 F.3d 1233, 1236 (11th Cir. 2001) (holding that plain view doctrine was sufficient alternative basis for the district court's denial of motion to suppress crack cocaine). In these circumstances, because the officer had probable cause to believe that narcotics were located in the interior portion of the Kia, the automobile exception to the warrant requirement was applicable. Under this exception, the police may make a warrantless search of a vehicle when there is probable cause to believe that it contains contraband or evidence of a crime. See California v. Acevedo, 500 U.S. 565, 569-70 (1991); United States v. Ross, 456 U.S. 798, 823 (1982); United States v. Magluta, 418 F.3d 1166, 1182 (11th Cir. 2005); United States v. Gonzalez, 71 F.3d 819, 825 n. 14 (11th Cir. 1996). For purposes of such search, it is no consequence that the vehicle was removed from its initial location and taken to the police department. See Chambers v. Mulroney, 399 U.S. 42, 52 (1975).

Upon these conclusions, it is not necessary to consider in detail the other exceptions relied upon by the government. However, I would agree with Dorsey's counsel that apart

---

[8] Counsel argues that the discovery was not inadvertent, and, thus, for this reason as well, the plain view doctrine has no merit. Here, while Castro deliberately looked in the car, his discovery of the crack was "inadvertent" within the contemplation of the doctrine.

5

from the crack cocaine in plain view, there is no evidence from the police which would allow the alternative conclusion that there was probable cause to believe there was additional crack cocaine in the Kia. Further, on this record, it is not clear that the search of the vehicle by Rieser was made on the basis of an inventory search, although it clearly could have been. Rieser's report and the circumstances suggest he conducted the search incident to the arrest and based on his observation of the crack rock on the seat. As Dorsey's counsel suggests, the government did not develop this aspect of its argument in much detail. The record, however, allows for the conclusion that this police department had a procedure for searching seized vehicles and it routinely employed an inventory search to protect the owner and the police in such circumstances.[9] Further, the police undoubtedly had the right to seize this vehicle and conduct such a search. The discovery of all the cocaine was likely inevitable.

Finally, as for the search incident to the arrest exception, Dorsey maintains that because he was arrested outside his car and the car was not within his "grabbable" area, the exception does not apply. In the first instance, the mere fact that he was out of his car at his arrest is not controlling. The Supreme Court has clearly permitted searches of the interior compartments of vehicles subsequent to arrests of "recent occupants." See Thornton v. United States, 541 U.S. 615, __, 124 S. Ct. 2127, 2129 (2004) (citing New York v. Belton, 453 U.S. 454 (1981)). Here, Dorsey was a "recent occupant" of the vehicle and was apparently attempting to get back to his car when arrested. By the description from Castro, the interior was arguably within Dorsey's grabbable area as that term is construed by the

---

[9]This can be gleaned from Castro's testimony and is evidenced by the inventory form for Washington's vehicle. Here, the officers knew first hand that the vehicle had been used in the commission of a drug offense and thus was subject to seizure and forfeiture. Castro testified that it was on this basis that the vehicle was removed to the police department in the first instance and that policy called for an inventory to protect the owner and the police. A review of Defendant's Exh. 4 also suggests that this police department had a routine procedure for conducting such searches.

Court. I believe that had the officers conducted the search of the interior compartment of the vehicle at the scene reasonably contemporaneous to Dorsey's arrest, the exception would apply to justify the search and seizure. Here, however, the officers had removed the vehicle to the police department. At that point, there was no possibility of Dorsey entering into the vehicle for purposes of destroying evidence or obtaining a weapon and the rationale underlying a search incident to the arrest simply would not support the search. Cf. United States v. Chadwick, 433 U.S. 1, 15-16 (1977), *overruled in part on other grounds by* California v. Acevedo, 500 U.S. 565 (1991).

For the above stated reasons, it is RECOMMENDED that **Defendant James Dorsey's Motion to Suppress Evidence Seized after Warrantless Search of 2005 Kia on April 8, 2005** (Doc. 34) be **DENIED**.

    Respectfully submitted on this
    21st day of December 2005.

    *[signature]*
    THOMAS B. McCOUN III
    UNITED STATES MAGISTRATE JUDGE

**NOTICE TO PARTIES**

Failure to file written objections to the proposed findings and recommendations contained in this report within ten days from the date of its service shall bar an aggrieved party from attacking the factual findings on appeal and a *de novo* determination by a district judge. 28 U.S.C. § 636(b)(1); Fed. R. Civ. P. 72; M.D. Fla. R. 6.02; see also Fed. R. Civ. P. 6; M.D. Fla. R. 4.20.

Copies furnished to:
United States District Judge
James Preston, Assistant United States Attorney
Mark Rankin, Counsel for Defendant