**UNITED STATES DISTRICT COURT
MIDDLE DISTRICT OF FLORIDA
TAMPA DIVISION**

**UNITED STATES OF AMERICA,**

    **Plaintiff,**

v.                                                  **Case No. 8:05-cr-389-T-23TBM**

**JAMES DORSEY;
SANDRA AVERY,**

    **Defendants.**
_____/

**REPORT AND RECOMMENDATION**

THIS CAUSE is before the court on a referral from the Honorable Steven D. Merryday for a Report and Recommendation on **Defendant James Dorsey's Motion to Suppress and Request for <u>Franks</u> Hearing** (Doc. 61), as supplemented (Doc. 65), **Defendant James Dorsey's Second Motion to Suppress and Request for <u>Franks</u> Hearing** (Doc. 83), as supplemented (Doc. 126), and the Government's responses in opposition (Docs. 66, 96).[1]

I.

By his first motion, Mr. Dorsey (hereinafter "Dorsey") seeks to suppress any and all evidence seized from his residence at 1714 Irving Street, Sarasota, Florida, pursuant to a search warrant issued by a state court judge on April 6, 2005 (hereinafter the "April

---

[1]Co-Defendant Sandra Avery has joined in the motions. <u>See</u> (Docs. 85, 114). There is no issue regarding standing on either motion.

warrant"). Dorsey alleges that the affiant, Detective James Rieser (hereinafter "Rieser"), made materially false or reckless statements in his application in support of the April warrant. See (Docs. 61-63). In particular, he alleges that the matters set forth at paragraphs two, three, four, and five of the affidavit are false or were made in reckless disregard of the truth. In support of his allegations that the affidavit sets forth false declarations, he submits an affidavit of one Timothy Haberer (hereinafter "Haberer"), which he maintains refutes these statements by Rieser.[2] Additionally, he urges that the averments were made with reckless disregard for the truth as evidenced by Rieser's failure to advise the judge that Haberer was a known abuser of crack cocaine and possessed a criminal record, that he himself did not trust Haberer and viewed him as merely "usually reliable," and that during the controlled buy referenced in the affidavit, Haberer was not thoroughly searched and out of the view of the detectives for a period of time. Pursuant to Franks v. Delaware, 438 U.S. 154 (1978), he asserts that because the affidavit does not otherwise reveal probable cause to support the search, the search and seizure were in violation of the Fourth Amendment and evidence seized as a result of the April warrant must be suppressed.

By Dorsey's second motion he seeks to suppress all evidence seized in an August 19, 2005, search of Ms. Avery's (hereinafter "Avery") residence at 4337 Arrow Avenue, Sarasota, Florida, including evidence taken from vehicles on the premises. As grounds for the motion, he again asserts that affiant, Rieser, made false statements or statements in reckless

---

[2]The government has conceded that "CI 1138" referenced in the affidavit is Haberer. By his affidavit of June 15, 2005, Haberer states that he never observed either Defendant sell drugs to anyone, including Don Shelley. Furthermore, he denies ever being in a residence belonging to either Defendant, and he denies ever being given or sold drugs by either Defendant. Finally, he denies ever hearing that Dorsey or Avery ever sold drugs. See (Doc. 61-4).

2

disregard for the truth concerning the drug activities of both Dorsey and Avery in an affidavit in support

of the warrant (hereinafter the "August warrant").[3] In factual support of his contention that Rieser made false averments in his affidavit, he again relies on the affidavits of Haberer and one Donald Shelley, whom he believes is "CI 1371" also referenced in this affidavit.[4] In particular, he asserts that the allegations in ¶¶ 4 and 5 of the affidavit in support of the August warrant are false. He again maintains that Rieser did not himself trust Haberer and knew he was a crack user with a criminal background and not a reliable informant, yet he concealed the truth of these matters from the judge issuing the August warrant (and similarly he failed to reveal evidence of Mr. Shelley's unreliability or untrustworthiness to the judge). Citing Franks, Dorsey again asserts that when these false statements are redacted from the affidavit, there is no probable cause to support the issuance of the warrant. Thus, by Dorsey's argument, the search and seizure conducted pursuant to the August warrant violated the Fourth Amendment, and the fruits of the search must be suppressed.

The government denies that Rieser made false statements or statements in reckless disregard for the truth in either affidavit and argues that the Defendant cannot meet the threshold requirements for a hearing under Franks.

II.

---

[3] As a supplemental exhibit to the second motion to suppress, Dorsey has filed an unredacted version of the affidavit for this search warrant. See (Doc. 126-2).

[4] As noted, the government concedes that "CI 1188," referenced at ¶ 5 of this affidavit, is Haberer. The Defendant's motion is predicated on the further belief that "CI 1371," referenced in ¶ 4 of the affidavit, is Donald Shelley. The government has denied that this is so. Therefore, Shelley's similar affidavit (Doc. 82-11) appears to have no relevance to the motion.

3

The following from the Franks decision quoted in United States v. Novaton, 271 F.3d 968 (11th Cir. 2001), is instructive on the inquiry at this stage of the proceedings:

> There is, of course, a presumption of validity with respect to the affidavit supporting the search warrant. To mandate an evidentiary hearing, . . . [t]here must be allegations of deliberate falsehood or of reckless disregard for the truth, and those allegations must be accompanied by an offer of proof. . . .
>
> In the event that at [a Franks hearing] the allegation of perjury or reckless disregard is established by the defendant by a preponderance of the evidence, and, with the affidavit's false material set to one side, the affidavit's remaining content is insufficient to establish probable cause, the search warrant must be voided and the fruits of the search excluded to the same extent as if probable cause was lacking on the face of the affidavit.

Id. at 986 (quoting Franks, 438 U.S. at 156, 171-72). In an abundance of caution, a hearing on the motions was conducted on March 13, 2006. A brief summary of the testimony from the hearing follows.

Haberer testified that on April 5, 2005, he was a confidential informant (hereinafter "CI") on behalf of the Sarasota Police Department and had worked with Rieser. On this date, he testified he did not contact the police, but he did assist Rieser in making a controlled purchase of $100.00 worth of crack cocaine from Dorsey. Before going into the residence, he was searched and given money for the purchase and a pager. After the purchase, he was searched again. He acknowledged that at the time, he would have been abusing crack cocaine. Haberer did this work for money.

Haberer testified that he executed an affidavit on June 15, 2005, at Dorsey's attorney's office. He spoke with the attorney and then when the affidavit was drafted, he

4

signed it. By his testimony, he signed the affidavit out of fear of Dorsey. Haberer testified that apart from his signature, every representation about Dorsey and Avery in the affidavit is false.

Regarding the August warrant, Haberer's testimony is quite vague. Even upon being shown the affidavit, he said that he contacted Rieser to advise him that Dorsey was out of jail.[5]

In questioning by Avery's counsel, he recounted an incident prior to his signing the affidavit when he admitted to Dorsey that he had purchased crack from Avery, and thereafter he was beat up for telling on "the wrong person." He blames this on Avery, based on seeing her white Cadillac while he was being hit and a conversation later with Avery. He denies reporting this to the police.

Apart from these matters, while Haberer did not wish to speak about his criminal history, the government does not dispute that he has prior convictions for petty theft, burglary to an unoccupied conveyance, grand theft, and prostitution. See (Doc. 65). Copies of pertinent Sarasota Police Department reports are also appended to the Defendant's motion. See (Docs. 61-5; 61-6; 83-12; 83-13). Additionally, Dorsey has filed a tape recording of telephone calls between Rieser, Haberer, and Avery purportedly made on March 24, 2005. See (Doc. 62). The recording is tendered in further proof that Rieser did not believe Haberer was trustworthy.

---

[5]On later questioning by Avery's counsel, Haberer acknowledged a question suggesting he contacted Rieser about Avery's drug activity. However, in response to the court's question, he said he just saw them "out and about." There was no clear confirmation that he related the information set forth on the August affidavit by Rieser.

5

Rieser, a former detective with the Sarasota Police (and now a DEA agent), testified that his unit conducted an investigation of Dorsey and Avery. Haberer was a confidential informant during this investigation. He employed Haberer to conduct a controlled buy from the Defendant's residence. According to Rieser, the buy was made in accordance with Sarasota Police Department policy, Haberer was driven to a location near the residence, searched, given money for the purchase, and a transmitting device.[6] Haberer was observed walking to Dorsey's residence. According to Rieser, he was thereafter able to overhear a transaction, but he transaction was not recorded. Haberer returned to a predetermined location and surrendered a large piece of crack cocaine, which he related came from Dorsey. After the April search, Dorsey was arrested. In August 2005, Rieser claims that he was advised by Haberer that Dorsey and Avery were again dealing in drugs. A trash pull at their residence supported that they were dealing in drugs again. With this information and information from another confidential informant, he obtained the August warrant.

Rieser acknowledged that he was aware of Haberer's criminal history and drug abuse. These matters were not revealed in the affidavit in support of either search warrant, nor was either judge advised that Haberer was a paid informant. Rieser offers no other explanation except to say that this information just was not included. Rieser further acknowledged that ¶ 3 of his April affidavit was inaccurate to the extent that it indicated that the Irving Street address was the residence of both Avery and Dorsey. This information from Haberer was incorrect in that Avery owned a separate residence on Arrow Avenue in Sarasota. This inaccuracy was not corrected for the judge. Rieser also indicated that he did

---

[6]According to Rieser, Haberer was unaware that the device transmitted and thought it was only a pager.

6

not advise the judge that Haberer was out of his sight for a few seconds during the controlled buy. Rieser acknowledged that Haberer's underwear was not searched before the controlled buy. Regarding Haberer's reliability, Rieser maintained that he had found Haberer to be reliable during the course of his work as a CI. On days when he used Haberer, Haberer was not "high." His description in the offense reports of Haberer as "usually reliable" was explained as being a standard entry for CI's based on a drop-down menu offered by the computer program in use.

Regarding the August affidavit, Rieser maintained that on the dates reflected in the affidavit, he was contacted by two CI's, Haberer and another, who advised that the Defendants were out of jail and were again dealing drugs. Through the use of public records, Rieser verified the location of Avery's residence on Arrow Avenue in Sarasota, and visual surveillance was taken up of the residence. During the surveillance, they identified vehicles known to belong to Dorsey and Avery. On August 15, 2005, Rieser and others conducted a garbage pull on trash cans in front of the Arrow Avenue address. A search of the trash revealed the matters set forth in ¶ 7 of the affidavit. Based on Rieser's experience, he believed that the matters reflected on the drug dealing activities of the Defendants.

The second CI mentioned in the August affidavit, "CI 1371," had only worked with the police for a couple of months. He or she too had a criminal record and was paid for his or her services, although this was not revealed to the judge. Rieser testified that this CI had observed Avery engaging in drug activity although this is not reflected in the affidavit.

Donald Greico, Esquire and Pollyanna Gaines-Williams also testified. In June 2005, Mr. Greico was representing Dorsey and was the individual who interviewed Haberer and

7

prepared the affidavit for his signature. Ms. Gaines-Williams witnessed and notarized the Haberer affidavit. By their testimony, Haberer was brought to the law office by Dorsey, was not threatened or coerced in any way, and evidenced no fear or coercion in executing the June 15, 2005, affidavit.

### III.

I find the following established by a preponderance of the evidence. Haberer is an abuser of crack cocaine and was using the substance at pertinent times during this investigation, although not necessarily on the dates in question. He has a criminal history as set forth above. He worked for the police for money. On investigative reports, he is described as "usually reliable." Beginning at least in March 2005, Sarasota Police were investigating the drug activities of Dorsey and Avery. As part of that investigation, Haberer and Rieser attempted unsuccessfully to make a drug purchase from Avery on or about March 24, 2005, and certain telephone conversations were recorded.[7] Thereafter, based on information from Haberer that the Defendants were actively selling drugs and had recently sold to his friend, Don Shelley, and that they stored the drugs at their residence on Irving Street, the police used Haberer to make a controlled purchase at the residence. The purchase was made from Dorsey.

On the basis of this information, Rieser swore out an affidavit in support of a request for a search warrant for the residence. The warrant was issued on April 6, 2005, and executed two days later. Rieser did not advise the judge of Haberer's drug use, his criminal history, of the fact that he was a paid informer, that he was out of sight of the police for a period of time

---

[7] Although this information was not set forth in either application for a warrant, as discussed below, it is pertinent to my consideration.

during the controlled buy, or that the police had not searched his underwear before the buy. Subsequent to this search, Haberer signed an affidavit prepared by Dorsey's attorney, which in essence indicated that he had no knowledge of or past drug dealings with Dorsey or Avery.

Upon my consideration, the Defendants have failed to prove by a preponderance of the evidence that Rieser made any deliberately false statements in his affidavit in support of the April warrant. On the other hand, I conclude the June 2005, affidavit of Haberer is entirely false and likely signed out of fear, as he testified.[8] While there are valid reasons to be leery of uncorroborated information from Haberer, and information about his motivation, drug use, and criminal history would have been beneficial to the state court judge as he evaluated the reliability and credibility of this informant, I cannot find that the omission of such matters from the affidavit whether recklessly or negligently made would have prevented the finding of probable cause in this instance. See United States v. Jenkins, 901 F.2d 1075, 1080 (11th Cir. 1990). These days, it is all too common an experience in these matters that police employ CIs who are involved in the drug trade as users or dealers or both to investigate other drug dealers. This is particularly true when controlled buys are made. Courts are not blind to this fact. Given the police supervision over this CI, the lack of information about Haberer's drug use, criminal history, or motivation for cooperation simply does not render this warrant application

---

[8]While Dorsey is correct that the March 2005, tape recordings reflect that Rieser, acting in an undercover capacity, indicated Haberer was untrustworthy, the recordings substantially undermine the Defendants' position. Thus, the conversations confirm the on-going investigation indicated by Rieser as well as the fact that Haberer and Avery (and Dorsey) clearly knew each other in the context of their drug dealings and that Haberer had dealt with them before. The recordings thus support Haberer's reliability rather than detract from it regardless of comments made by Rieser to induce Avery to do a drug deal with him.

lacking in probable cause by reason of these omissions.  In light of all the circumstances presented, there was probable cause for issuing a warrant as there was a fair probability of finding drugs at the suspect location.  See United States v. Johnson, No. 05-14287, 2006 WL 435610, at *3 (11th Cir. Feb. 24, 2006) (citing United States v. Brundidge, 170 F.3d 1350, 1352 (11th Cir. 1999)).  The additional criticism of the manner in which the controlled buy was conducted does not prompt a different conclusion.  See id.; United States v. Manning, No. 04-15719, 2005 WL 1663170, at *7 (11th Cir.  July 18, 2005).  Accordingly, Defendant James Dorsey's Motion to Suppress (Doc. 61) should be denied.

Regarding the August search warrant, Haberer's testimony is quite vague and does not support that he advised Rieser of the particular information set forth in ¶ 5 of the affidavit in support of the warrant.  On the other hand, the Defendants have not established by a preponderance of the evidence that the averments by Rieser are false.  Apart from this, in accordance with Franks, even if the court were to set this paragraph aside, the balance of the affidavit would supply sufficient information to warrant a finding of probable cause to support the issuance of the warrant.  While CI 1371 had not been a CI for long, this fact was made known to the judge.  More importantly to this motion, the Defendants have made no showing that the information set forth in the affidavit from CI 1371 was false.  The information revealed by or reasonably inferred from the trash pull suggested both the Defendants' connection with this residence and on-going criminal activity related to crack cocaine.[9]  Thus, even assuming that Rieser provided the court with false information concerning the report of Haberer, the court would still determine that the remaining information in the search warrant

---

[9]Information learned from a trash pull may support a finding of probable cause to support a warrant.  See United States v. Maali, 346 F. Supp. 2d 1226, 1245 (M.D. Fla. 2004).

10

justified a finding of probable cause to support the issuance of the warrant. For the reasons discussed above, I conclude that the failure to reveal either CI's criminal history, motivation, or drug use is not enough in these circumstances to establish that Rieser acted with such reckless disregard for the truth that this warrant should be suppressed. Accordingly, Defendant James Dorsey's Second Motion to Suppress (Doc. 83) should be denied.

## IV.

For the foregoing reasons, it is recommended that the court DENY Defendant James Dorsey's Motion to Suppress and Request for <u>Franks</u> Hearing (Doc. 61) and Defendant James Dorsey's Second Motion to Suppress and Request for <u>Franks</u> Hearing (Doc. 83).

    Respectfully submitted on this
    17th day of March 2006.

*[signature]*

THOMAS B. McCOUN III
UNITED STATES MAGISTRATE JUDGE

### **NOTICE TO PARTIES**

Failure to file written objections to the proposed findings and recommendations contained in this report within ten days from the date of its service shall bar an aggrieved party from attacking the factual findings on appeal and a *de novo* determination by a district judge. 28 U.S.C. § 636(b)(1); M.D. Fla. R. 6.02.

Copies furnished to:
The Honorable Steven D. Merryday, United States District Judge
James Preston, Assistant United States Attorney
Counsel for Defendants

11